550 P.2d 277

**G. M. SHUPE, INC., Appellant,**

**v.**

**BUREAU OF REVENUE of State of New Mexico, Appellee.**

**No. 2183.**

Court of Appeals of New Mexico.

April 13, 1976.

Certiorari Denied June 3, 1976.

James J. Workland, Workland & Erickson, Spokane, Wash., Joseph A. Sommer, Sommer, Lawler & Scheuer, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Vernon O. Henning, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

LOPEZ, Judge.

The taxpayer appeals an order and decision of the Bureau of Revenue imposing gross receipts taxes, interest and penalties. Section 72–16A–4, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975). We affirm.

The taxpayer presents four issues for reversal: (1) that the tax was illegally imposed because the taxpayer's activities were on Indian land; (2) that the Bureau had no authority to retain an erroneous overpayment of taxes in partial satisfaction of a disputed tax due under a separate transaction; (3) that the assessment of penal-

ties was arbitrary; (4) and that the Commissioner's role as a decision-maker violated due process.

The taxpayer is a Washington corporation, qualified to do business in New Mexico, which is presently constructing a dam on the Nambe Pueblo. The taxpayer is being paid for this dam by the United States Department of the Interior, Bureau of Reclamation.

### (1) State Taxation Jurisdiction

■ The taxpayer argues that the state is without jurisdiction to impose a tax on it. The argument rests on the location of the activity which gave rise to the tax—the Nambe Pueblo. The territorial view of sovereignty has been subjected to a reexamination when the taxation is of non-Indians. Activities by non-Indians on Indian land have generally been held not exempt from state taxation. *Oklahoma Tax Commission v. Texas Co.,* 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721 (1949); *Thomas v. Gay,* 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740 (1898); *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); *Norvell v. Sangre de Cristo Development Company, Inc.,* 372 F.Supp. 348 (D.N.M.1974), rev'd on other grounds, 519 F.2d 370 (10th Cir. 1975); *Prince v. Board of Education of Central Consolidated Independent School District No. 22,* 88 N.M. 548, 543 P.2d 1176 (1975); *Chief Seattle Properties, Inc. v. Kitsap County,* 86 Wash. 2d 7, 541 P.2d 699 (1975). However, the inquiry does not end with the recognition that the tax is on a non-Indian entity because the tax still has the potential for interference with protected rights. The two major issues are whether the subject of the tax is governed by substantial federal regulation and whether the imposition of the tax will infringe on Indian rights of self-government.

■ The federal preemption doctrine was developed in *Warren Trading Post Co. v. Arizona Tax Comm'n,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965), in which the Supreme Court struck down a gross receipts tax on the income of a company which operated a trading post on the Navajo reservation. The Court discerned in the existing federal regulations an intent that the state not impose additional burdens on the traders or those with whom they dealt. There are no comparable existing regulations in this case. The taxpayer's argument in this case is that federal policies respecting the Indians would be frustrated by the taxation of a contractor executing a federal contract. Insofar as the taxpayer claims immunity solely because he is carrying out a federal contract, he is making the same argument which has been rejected in numerous federal instrumentality cases. See, e.g., *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). No specific federal policy regarding the Indians has been shown to have been frustrated or impaired by the Bureau's actions in taxing the contractor.

■ The other operative principle governing the state's power to tax non-Indians for their activities on Indian land is derived from *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). The Court in a later case characterized *Williams* as summarizing the way in which: " * * notions of Indian sovereignty have been adjusted to take account of the State's legitimate interests in regulating the affairs of non-Indians." *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The *Williams* test is: " * * * whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee,* supra. In *Williams* because there was a tribal court which could decide the dispute between the non-Indian trader and the Indian defendants, the jurisdictional claims of the state court were denied. In *McClanahan* the Court noted that *Williams* was designed to resolve conflicts between the state and the Indian tribe " * * * by providing

that the State could protect its interest up to the point where tribal self-government would be affected." *McClanahan v. Arizona State Tax Comm'n,* supra. In the case before us the taxpayer has failed to point to any specific way in which the tribe will be affected, relying instead on a general invocation of sovereignty. The Nambe Indians are not paying the contractor; thus from all that appears of record, the Nambe Indians will not sustain any direct financial burden as a result of this tax. The Nambe Indians have not themselves asserted tax jurisdiction over the taxpayer's activities, although the record reveals that discussions are being had about such a step. There is no indication from the record that the Pueblo will sustain any direct effects as a result of the tax, and therefore no conflict with tribal sovereignty is shown.

In addition to the broad principles of preemption and sovereignty, the taxpayer points to several statutory provisions which he argues prohibit the imposition of this tax. Because the tax is on a non-Indian, none have the dispositive effect for which the taxpayer contends, and their effect must be determined by the principles governing conflicts between Indian sovereignty and state law discussed above.

### Buck Act

■ The Buck Act (4 U.S.C. § 105 et seq. (1970)) provides for imposition of taxes in certain federal areas. Included among these taxes are gross receipts taxes. 4 U.S.C. § 110(c). The exemption for Indians found in the Act applies only to taxes "on or from any Indian". 4 U.S.C. § 109 (1970). Thus, although the Act does not necessarily give the state a power to tax (see, *Warren Trading Post v. Arizona Tax Comm'n,* 380 U.S. 691 at n. 18, 85 S.Ct. 1242), it does not in this instance restrict the state's power.

### Disclaimer

■ The taxpayer argues that New Mexico, in its Constitution, disclaimed all right to tax activities on Indian lands. The disclaimer is of "all right and title"

to Indian lands. N.M.Const. Art. XXI, § 2. This disclaimer has been interpreted to be a disclaimer of proprietary interest, not of governmental control. *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe,* 84 N.M. 343, 503 P.2d 323 (1972). See *Organized Village of Kake v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). Thus, taxation of activities of non-Indians on Indian land does not violate this provision.

### Public Law 83–280

The taxpayer argues that since New Mexico did not assume jurisdiction over the Nambe Pueblo under Public Law 83–280 (18 U.S.C. § 1162 (1970) and 28 U.S.C. § 1360 (1970)) New Mexico cannot assert taxing jurisdiction over activities on Indian lands.

■■ In *State v. Warner,* 71 N.M. 418, 379 P.2d 66 (1963), the New Mexico Supreme Court held that the state's failure to assume jurisdiction under this Act did not prevent the imposition of the state's criminal laws on a non-Indian for his actions on the reservation. In *Paiz v. Hughes,* 76 N.M. 562, 417 P.2d 51 (1966), it was explained that the *Williams* test, discussed above, must be used to determine the state's jurisdiction over a non-Indian for actions on Indian lands.

### Indian Trade and Intercourse Act

■ The taxpayer argues that the federal statutes regulating Indian traders (25 U.S.C. § 261–64 (1970)) preempt taxation of his activities, as in *Warren Trading Post Company v. Arizona Tax Comm'n,* supra. Since the taxpayer is not an Indian trader, the Act does not appear to have any regulatory effect on him.

### Appropriations Act

■ The taxpayer also relies on a provision contained in the Appropriations Act of March 3, 1905 (33 Stat. 1048, Chap. 1479, § 1). In relevant portion this Act states that " * * * all personal property furnished said Indians [the Pueblo Indians

of New Mexico] by the United States * * *" shall be free from taxation. Although the contract is arguably "personal property", it was not given to the Indians, but rather to the non-Indian taxpayer, and the section is inapplicable.

### Due Process

█ The taxpayer argues that the state cannot tax him because it has not extended any benefits to the Nambe Indians. *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed.2d 267 (1940). The state's ability to tax this taxpayer is not controlled by the lack of benefits given the Nambe Indians since the taxpayer received benefits from the state while present here.

### (2) Refund

█ At the time the taxpayer was engaged in construction of the Nambe Dam, it was also subcontractor on an unrelated project in Las Cruces. Through an error the taxpayer paid gross receipts on the Las Cruces project, which were not owed. The Bureau retained these receipts and applied them to the amount due on the Nambe project. No demand for repayment was made and the Commissioner was within his discretion in applying the amount wrongfully paid to the amount he determined to be owing. Section 72-13-43(C), N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1975).

### (3) Penalties Imposed

█ The taxpayer contests the decision of the Commissioner to assess a penalty and interest under § 72-13-80 and § 72-13-82, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975) as arbitrary and without foundation. The evidence was conflicting as to the taxpayer's negligence and the Commissioner's decision was supported by substantial evidence.

### (4) Lack of Impartial Arbiter

█ The taxpayer raises several points relating to unfairness in the procedure below, including the failure of the Bureau to supply an impartial arbiter. These arguments were not made below and will not be considered here. Section 72-13-39, N.M. S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975).

The decision and order of the Commissioner are hereby affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, J., concurs specially.

SUTIN, Judge (specially concurring)..

I concur in the result.

Legal problems which involve disputes between Indian tribes and the State of New Mexico have reached an eruptive stage. One of the explosive factors is the gross receipts tax on non-Indians doing work on Indian land. A philosophical concept stated in 1832 is applicable today. Justice McLean, in a concurring opinion written in *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832) said:

> * * * [T]heir existence within a state, as a separate and independent community, may seriously embarrass or obstruct the operation of the state laws. If, therefore, it would be inconsistent with the political welfare of the states, and the social advance of their citizens that an independent and permanent power should exist within their limits, *this power must give way to the greater power which surrounds it, or seek its exercise beyond the sphere of state authority.* [Emphasis added] [31 U.S. at 594].

The taxpayer is a foreign corporation authorized to do business in New Mexico. It strongly argues, (1) that it is protected from paying a gross receipts tax because it sits under the shelter of Nambe Pueblo to withstand the power of the state to tax; (2) that "The record is completely devoid of any State, County or City governmental services available to *the Pueblo of Nambe,* * * * The Bureau's assessment * * * is an interference with the sovereignty of the *Nambe* * * *. Taxpayer's activities * * * are subject to the taxing

power of the *Nambe* Tribe * * *. The *Nambe* has not consented to the Bureau of Revenue assessment * * *. New Mexico's attempt to tax the gross receipts * * * is an attempt to regulate what business may be carried on with the *Pueblo* * * *. The essential purpose of taxpayer's activity is the enhancement of *Indian* property * * *. [T]he practical effect would be to discourage contractors from commencing projects on *Indian* land." [Emphasis added].

These are strong moral arguments for the Nambe Pueblo to make to assist taxpayer. Taxpayer claimed the Pueblo was an indispensable party to this proceeding but that motion was denied. The Gross Receipts Tax Act does not tax Indians or Indian lands. It does not interfere with Indian sovereignty. The Nambe Pueblo did not employ taxpayer. Taxpayer is engaged in the construction of the Nambe Pueblo Dam pursuant to contract with the United States Department of Interior, Bureau of Reclamation. Its receipts come from the federal government for performing services in New Mexico.

The time has come to state emphatically that Indian sovereignty does not exceed state authority to tax when a non-Indian corporation comes to New Mexico to work on Indian land for the federal government.

Nambe Pueblo is greatly benefited by these construction activities. It does not suffer by state taxation. It may also tax with knowledge that "the power to tax involves the power to destroy" its economic development. It may suffer by double taxation, but it cannot claim that its power to tax can override the power of the state to tax to preserve the political welfare of the state.

Pueblo Indians constitute a tribe. Pueblo lands are Indian Country. Pueblo Indians are wards of the United States occupying a special status of tutelage. *Sangre De Cristo Dev. Corp., Inc. v. City of Santa Fe,* 84 N.M. 343, 503 P.2d 323 (1972). Taxpayer relies on *Your Food Stores, Inc. (NSL) v. Village of Espanola,* 68 N.M. 327, 361 P.2d 950 (1961). This case does hold that New Mexico has no governmental power over Indians or Indian lands, except where such jurisdiction has been specifically granted by Act of Congress, or sanctioned by the decisions of the Supreme Court of the United States. It said:

> We think that the Pueblo Indian tribes possess inherent sovereignty except where it has been specifically taken from them by congressional action. [68 N.M. at 331, 361 P.2d at 954].

What is meant by "inherent sovereignty"? *Your Food Stores* said that the state cannot annex Indian land leased by the Pueblo to a corporation for use as a supermarket and variety store. The lease was void because the land was not within corporate limits of the Village of Espanola. *Sangre De Cristo* holds that where Congress has preempted all control over the leasing of Indian lands, which included the subdivision thereof, there is no room for the state to impose additional or conflicting controls relating to the subdivision, even though the Indian land lies within the corporate limits of the City of Santa Fe, and the land is leased to a domestic corporation.

"Inherent sovereignty" means that the tribe has full control over its land, its use and development, and its people until this power is specifically taken away by Congress. It has power to adopt a constitution, with executive, legislative and judicial authority to govern its people. It may develop an Indian society in keeping with its traditions. It may develop its lands, industrialize its economy, assess taxes and live in complete freedom of thought, ideas and culture on its own territory. New Mexico cannot exercise any governmental power over the Indians or their land.

However, where the activity of the Indians obstructs the operation of state laws and is inconsistent with the political welfare of the state and the social advance of its citizens, Indian "inherent sovereignty" must give way to the power of the state to enact legislation. The

power of the state to tax gross receipts of non-Indian corporations that do business on Indian lands within the territorial boundaries of the state, are essential to the political welfare and social development of the citizens in this state. The Indian tribe and the federal government cannot allow the non-Indian corporation to escape taxation unless Congress or New Mexico exempt it from taxation. No deviations by contract, no process of anamorphosis, no misinterpretation of the tax laws, no speculation on Indian development, can assist non-Indians to escape the burdens of taxation.

To solve this problem, Indians must look to the Congress of the United States or the Legislature of New Mexico to exempt non-Indians who fall within the meaning of the Gross Receipts Tax Act. "We find no federal preemption." *Palm Springs Spa, Inc. v. County of Riverside,* 18 Cal.App.3d 372, 95 Cal.Rptr. 879, 883 (1971).

Taxpayer stated at the hearing that it reviewed the bid items of the Bureau of Reclamation. It concluded that the contract was not subject to the New Mexico Gross Receipts Tax Act based upon the advice of its vice-president and a national C.P.A. firm. Taxpayer could have submitted its problem to the Attorney General of New Mexico or the Commissioner of Revenue to determine whether the burden of taxation was a reality. It cannot now seek succor by reliance on Indian sovereign immunity. It must establish that its activity in New Mexico is not subject to the Gross Receipts Tax Act.

Indian sovereignty vs. state sovereignty has been a long, controversial, complex legal problem. This problem will continue as long as the Indian people desire to remain wards of the United States.

Taxpayer seeks two additional avenues of escape from taxation not mentioned in the majority opinion.

*First,* it says that "the tax would be an impediment to the free flow of commerce and to the 'discernable Federal policy' of encouraging Indians to be economically self-sufficient on the reservation." It cites as authority *Makah Indian Tribe v. Clallam County,* 73 Wash.2d 677, 440 P.2d 442 (1968) and the *United States v. Rickert,* 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903).

*Makah Indian Tribe* holds:

Congress neither having specifically provided for the taxation by the state * * * of personal property owned by a Makah Indian, nor having impliedly granted such power, the ad valorem personal property tax by Clallam County may not be imposed upon personal property which is continuously used, kept and maintained on the Makah Reservation by a Makah Indian. [440 P.2d at 448].

I agree. This quotation is followed by a dissertation on the natural dignity of the American Indian with which I agree. It says that the resolution of the problem of benefits and correlative responsibilities of Indian citizenship is one for the Congress and the President to solve, with which I agree.

*Rickert* holds that lands held by allottees and the other Indians named in the General Allotment Act of 1887, with permanent improvements, and personal property thereon, are not subject to assessment and taxation by the taxing authorities of South Dakota. The quarrel between Indian tribes and states over the duty of Indians, with full citizenship rights, to share the burden of government with other citizens of the state are considerations to be addressed to Congress.

Taxpayer's reliance on these cases suffers the pangs of weakness in its position.

*Second,* taxpayer contends that state taxation of the taxpayer is interference with the self-government power of the Nambe Pueblo to tax. Taxpayer relies on *Littell v. Nakai,* 344 F.2d 486 (9th Cir. 1965), and *Iron Crow v. Ogallala Sioux Tribe,* 129 F.Supp. 15 (D.S.D.1955).

These cases involve internal Indian quarrels within the jurisdiction of the Indian tribal courts, and not the federal courts. They establish the self-governing power of Indian tribes to settle their own problems. They have the power to tax. Taxpayer's last stand meets with defeat.

Cicero said long ago that "Taxes are the sinews of the state." Taxpayer cannot destroy that power.