564 P.2d 932

Arizona DEPARTMENT OF
REVENUE, Appellant,

v.

HANE CONSTRUCTION CO., INC., a
California Corporation, Appellee.

No. 1 CA–CIV 3155.

Court of Appeals of Arizona,
Division 1,
Department B.

March 22, 1977.

Rehearing Denied April 21, 1977.

Review Denied May 24, 1977.

**244**

Bruce E. Babbitt, Atty. Gen. by Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellant.

Powers, Boutell, Fannin & Kurn by James Powers, Guy David Knoller, Phoenix, for appellee.

SCHROEDER, Presiding Judge.

The issue in this appeal is whether the State of Arizona may validly impose its transaction privilege tax upon a contractor doing construction work on the Colorado River Indian Reservation pursuant to a contract with the Bureau of Indian Affairs. The trial court entered summary judgment for the contractor, and the State has appealed.

Hane Construction Co., the appellee, entered into a contract with the Bureau of Indian Affairs for the lining of canals on the reservation. Hane had no other work in Arizona at any time material to this case, and it submitted its bid on this job without making allowance for payment of the Arizona State transaction privilege tax. A.R.S. §§ 42–1309 and 1310. Hane paid the taxes under protest, and sought no adjustment with the B.I.A. of the contract price to reflect the taxes.

The appellee offers a number of arguments attacking the authority of the State to impose the tax and in support of the trial court's ruling. While the arguments raised touch on what have been sensitive and controversial areas of conflict involving state, federal and Indian jurisdiction and sovereignty, we find no impediment to imposi-

tion of the tax in this case and hold that the trial court was in error in requiring the State to refund the taxes.

■ We perceive the appellee's initial argument to rest upon the nature of the Arizona tax. Appellee contends that since this is a transaction privilege tax, it can be levied only where the State itself may grant or deny the contractor the privilege of performing a contract. We are aware of no general exemption of federal contractors from state law. The appellee places principal reliance upon *Electric Construction Co. v. Flickinger,* 107 Ariz. 222, 485 P.2d 547 (1971), cert. denied, 404 U.S. 952, 92 S.Ct. 285, 30 L.Ed.2d 269 (1971), holding that the State of Arizona could not require a construction contractor on a military base to have a state contractor's license. The case, however, was not decided on the basis of any general immunity of federal contractors from state licensing regulations or revenue measures, but rather was based on a specific conflict between Arizona's licensing scheme and the federal regulations governing the choice of federal contractors.

■ Although the appellee here has suggested that there are federal regulations or other provisions of law which expressly conflict with the imposition of the transaction privilege tax in this case, it has called no such specific regulations to our attention. Moreover, in view of statements made by counsel at oral argument that the appellee could have included the tax in computing its bid and been reimbursed for these taxes, there could be no such conflict between the imposition of this tax and the applicable federal contracting law.

Similarly, in the field of Indian law, the United States Supreme Court has very recently emphasized that where state taxing statutes have been found invalid, invalidation has been based upon specific conflict with federal law, and "not any automatic exemptions 'as a matter of constitutional law' either under the Commerce Clause or the intergovernmental-immunity doctrine . . . ." *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,* 425 U.S. 1634, 96 S.Ct. 1634, 1645 n. 17,

48 L.Ed.2d 96, 110 n. 17 (1976). *See also Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), in which the Court cautioned against any generalizations as to the validity of revenue laws, stating that any such generalizations have given way to individualized treatment of specific treaties and statutes as they affect the respective rights of the federal government, states and Indians. (411 U.S. at 148, 93 S.Ct. at 1270, 36 L.Ed.2d at 119.)

■ Thus a state may not impose its laws in an area which is so tightly regulated by the federal government that there is no room for taxation or regulation by the states. This was the situation presented in *Warren Trading Post Company v. Arizona State Tax Commission,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965), involving regulation of Indian traders on the reservation. In this case, there is no such showing.

Although the federal regulations governing this type of contract are comprehensive, they specifically recognize that there may be an applicable state tax. See 41 C.F.R. § 1–11.302, made applicable to this contract by the Bureau of Indian Affairs in 41 C.F.R. § 14H–1.008.

■ State action may also be invalid where it undermines tribal authority and interferes with tribal self-government. *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Here there is no interference with tribal self-government. The contract itself is with the Bureau of Indian Affairs, not with the tribe; the funds are not Indian funds but appropriation of public monies. *See Scholder v. United States,* 428 F.2d 1123 (9th Cir. 1970), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246. There is no indication that an imposition of this tax in any way affects the Indians' own powers to collect revenues or to conduct tribal affairs.

■ The third, and historically the most important area of federal preemption, is the federal policy precluding tax upon reservation Indian income or on Indian lands. The State may tax non-Indians and non-Indian property within the reservation even though the State has not expressly assumed jurisdiction over the reservation pursuant to Public Law 83–280 (18 U.S.C. § 1162) (1970) and 28 U.S.C. § 1360 (1970). *Kahn v. Arizona State Tax Commission,* 16 Ariz. App. 17, 490 P.2d 846 (1971). Examples of cases invalidating taxes on Indian property and land are *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), and *Mescalero Apache Tribe v. Jones, supra.*

■ This tax, however, is not a tax on Indian income, property or lands. The tax falls upon the contractor and cannot legally be shifted to anyone else, *Tower Plaza Investments, Limited v. DeWitt,* 109 Ariz. 248, 508 P.2d 324 (1973). As we have seen, the contracts under which it was in fact paid were funds generated by a contract with the Bureau of Indian Affairs, not with the Indians.

The only effect upon the Indians suggested by the contractor is remote indeed. The appellee theorizes that if in the long run the tax were to be imposed, it would increase B.I.A. contract prices and leave less money available for the direct benefit of the Indians. Such a result, were it to occur, would still be a far cry from a direct passing of the tax on to the tribe. There is authority that even when the tax is directly passed on to the Indians, the tax is nevertheless valid. *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). Moreover, in this case, since the appellee itself absorbed the tax and did not seek any reimbursement from the government, the contract price was not affected one iota by the imposition of the tax, and the tax itself had not the slightest effect upon Indian property or lands.

■ Finally, the appellee argues that even if the tax might be imposed on Arizona contractors doing work on the Indian reservation, it cannot be imposed in this case because the appellee is from out of state and had insufficient contact with the State of Arizona. There is no question that the contracting activities went on within the geographic borders of this state, and

any disputes between non-Indians arising out of the activities would be subject to state court jurisdiction so as to provide the benefit and protection of Arizona's laws. In addition, the facts developed in summary judgment showed that the appellee hired substantial non-Indian personnel from off the reservation, which in and of itself is more than a minimal contact with the State. Our Supreme Court has squarely stated that the mere fact that a business activity occurs within the boundaries of the reservation does not remove the transaction from Arizona's jurisdiction, and the transaction privilege tax can be collected on activities taking place on the reservation. *Industrial Uranium Company v. State Tax Commission,* 95 Ariz. 130, 387 P.2d 1013 (1963).

The overall questions presented here are very similar to those considered by the New Mexico Court of Appeals in *G. M. Shupe, Inc. v. Bureau of Revenue,* 89 N.M. 265, 550 P.2d 277 (1976), and we are in accord with both the result and the reasoning of that decision.

The judgment below is reversed.

WREN and EUBANK, JJ., concur.