In the Matter of the STATE MOTOR FUEL TAX LIABILITY OF A. G. E. CORPORATION.

No. 12323.

Supreme Court of South Dakota.

Argued June 7, 1978.

Decided Dec. 29, 1978.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for appellant.

Gene R. Woodle, Asst. Atty. Gen., Pierre, for respondent.

HOYT, Circuit Judge.*

## CASE SUMMARY

This is an appeal from the judgment of the circuit court affirming the decision of the Secretary of Revenue, State of South Dakota that imposed a use fuel tax liability on the A.G.E. Corporation in the amount of $13,317.27, together with interest at the rate of one percent per month accruing from the date of the order. We affirm the circuit court's decision.

## FACTS

Appellant, A.G.E. Corporation, is a non-Indian, family owned domestic corporation with its principal place of business at Ft. Pierre, South Dakota. A tax deficiency was assessed by the Department of Revenue against appellant after an audit concerning diesel fuel used in 1974 by appellant in the completion of three contracts for the construction of highways on the Rosebud Sioux, and Pine Ridge Reservations in South Dakota. In each instance the roads were constructed pursuant to contracts issued by the United States Department of Interior, Bureau of Indian Affairs, Aberdeen Area Office, Aberdeen, South Dakota. Upon completion of the construction, payment was made by the United States Department of Interior. In each instance the roads constructed were reservation highways and were not a part of the South Dakota primary or secondary road system.

## ISSUES

The principal issue presented in this appeal is whether the State of South Dakota has jurisdiction to assess a use tax on fuel used in highway construction work on highways located within the Pine Ridge and Rosebud Indian Reservations pursuant to contracts by the United States Department of Interior. If the state has jurisdiction, the second issue presented is whether the Department of Revenue has authority, pursuant to SDCL 10–48, to impose the tax

* Sitting for Porter, Justice, pursuant to SDCL 16–1–5.

upon appellant under the facts presented in this case.

## DECISION

■ Appellant argues that under the facts of this case the state is without jurisdiction to impose the use fuel tax provided in SDCL 10–48, on the grounds that the tax is in effect a tax upon an Indian tribe. For a resolution of this contention it is necessary that we proceed to make a series of determinations. The first would be whether the federal preemption doctrine precludes the imposition of the tax by the state. In *Valandra v. Viedt*, S.D., 259 N.W.2d 510, 512 (1977), this court reaffirmed its recognition of the general rule adopted by both the United States Supreme Court and this court:

"State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply. It follows that Indians and Indian property on an Indian reservation are not subject to State taxation except by virtue of expressed authority conferred upon the State by act of Congress."

We also recognize that the United States Supreme Court in *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) and in *McClanahan v. Arizona Tax Commission*, 411 U.S. 164, 170, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) stated very clearly that in the special area of state taxation on federal lands the test to be applied is whether jurisdiction has been ceded by the federal government or whether a federal statute specifically grants the power of taxation to the state.

■ We are of the opinion that the United States has granted to the states the right to exercise limited jurisdiction in taxing the use or sale of gasoline or other motor vehicle fuel within federal areas in exactly the same manner as if those areas did not exist, except in cases where the gasoline is to be used exclusively by the United States. Jurisdiction was extended to the states by Section 10 of the Hayden-Cartwright Act, 49 Stat. 1521, 4 U.S.C.A. § 104 (1936) [1] and in Section 1 of the Buck Act. 54 Stat. 1060, 4 U.S.C.A. § 105n(1940) [2]. For a discussion of the history of the Hayden-Cartwright Act and the amendment by the Buck Act see *State of Minnesota v. Keeley*, 126 F.2d 863 (8th Cir. 1942); *Sanders v. Oklahoma Tax Commission*, 197 Okl. 285, 169 P.2d 748 (1946).

■ Appellant contends that the federal preemption doctrine precludes imposition of the tax by the state in this case, citing *Warren Trading Post v. Arizona Tax Com.*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). In *Warren*, the Supreme Court struck down a gross receipts tax on income of a company which operated a trading post on the Navajo Reservation. The Supreme Court of New Mexico was faced with this contention in the case of *G. M. Shupe v. Bureau of Revenue*, 89 N.M. 265, 550 P.2d 277, (1976), a case which involved a non-In-

---

1. 4 U.S.C.A. § 104 provides:

All taxes levied by any State, Territory, or the District of Columbia upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, license traders, and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States. . . .

2. 4 U.S.C.A. § 105 provides:

No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

dian contractor constructing a dam on the Nambe Pueblo Reservation pursuant to a contract with the United States Department of Interior, Bureau of Reclamation. In distinguishing *Warren,* that court stated:

The [United States Supreme Court] discerned in the existing federal regulations an intent that the state not impose additional burdens on the traders or those with whom they dealt. There are no comparable existing regulations in this case. The taxpayer's argument in this case is that federal policies respecting the Indians would be frustrated by the taxation of a contractor executing a federal contract. Insofar as the taxpayer claims immunity solely because he is carrying out a federal contract, he is making the same argument which has been rejected in numerous federal instrumentality cases. See, e. g., *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). No specific federal policy regarding the Indians has been shown to have been frustrated or impaired by the Bureau's actions in taxing the contractor. 89 N.M. at 267, 550 P.2d at 279.

We adopt this reasoning as being dispositive of this contention by appellant.

■ The second determination deals with appellant's contention concerning the application to this case of the federal instrumentality doctrine, as recognized by this court in the case of *Pourier v. Board of County Com'rs of Shannon Co.,* 83 S.D. 235, 157 N.W.2d 532 (1968). The United States Supreme Court recognized in the early decision of *Thomas v. Gay,* 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740, (1898) that non-Indians engaged in normal business transactions would not be exempt from state taxes because of dealings with Indians where the tax did not directly affect the Indians. In *Thomas,* it was contended that the taxation of cattle owned by non-Indians and located for grazing purposes on Indian reservations, under leases duly authorized by act of Congress, was a violation of the rights of the Indians and an invasion of the jurisdiction and control of the United States over them and their land. The Supreme Court disagreed, stating:

But it is obvious that a tax put upon the cattle of the lessees is too remote and indirect to be deemed a tax upon the lands or privileges of the Indians. . .

The suggestion that such a tax on the cattle constitutes a tax on the lands, within the reasoning in the case of *Pollock v. Farmers' Loan & Trust Company,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 [39:759], is purely fanciful. The holding there was that a tax on rents derived from lands was substantially a tax on the lands. To make the present case a similar one the tax should have been levied on the rents received by the Indians, and not on the cattle belonging to third parties.

It is further contended that this tax law of the territory of Oklahoma, in so far as it affects the Indian reservations, is in conflict with the constitutional power of congress to regulate commerce with the Indian tribes. It is said to interfere with, or impose a servitude upon, a lawful commercial intercourse with the Indians, over which congress has absolute control, and in the exercise of which control it has enacted the statute authorizing the leasing by the Indians of their unoccupied lands for grazing purposes.

The unlimited power of congress to deal with the Indians, their property and commercial transactions, so long as they keep up their tribal organizations, may be conceded; but it is not perceived that local taxation, by a state or territory, of property of others than Indians would be an interference with congressional power.

. . . .

The taxes in question here were not imposed on the business of grazing, or on the rents received by the Indians, but on the cattle as property of the lessees, and, as we have heretofore said that such a tax is too remote and indirect to be deemed a tax or burden on interstate commerce, . . . . 169 U.S. at 273, 18 S.Ct. at 343, 42 L.Ed. at 744.

The case of *Oklahoma Tax Commission v. Texas Co.,* 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721 (1949) not only further extends the taxation of non-Indians on Indian lands but also provides a review of the cases involved in the change in the Court's position. *G. M. Shupe,* supra, recognized that activities by non-Indians on Indian land have generally been held not exempt from State taxation.

The present case is distinguishable from our decision in *Pourier,* where we found that Indian-owned cattle herds which had been developed from cattle originally purchased from allotment money or from tribal loans and which were located on Indian reservations were not subject to county personal property tax. Under the facts of this case, the state is not attempting to tax an Indian tribe, an Indian, or any Indian property on an Indian reservation.

As demonstrated above, it is well established that certain activities by non-Indians on Indian land have been held to be subject to state taxation. See also, *Agua Caliente Band of Mission Ind. v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); *Norvell v. Sangre de Cristo Development Co. Inc.,* 372 F.Supp. 348 (D.N.M. 1974), rev'd on other grounds, 519 F.2d 370 (10th Cir. 1975); *Prince v. Board of Ed. of Cent. Con. Ind. Sch. D. No. 22,* 88 N.M. 548, 543 P.2d 1176 (1975); *Chief Seattle Properties Inc. v. Kitsap County,* 86 Wash.2d 7, 541 P.2d 699 (1975). We do not consider the imposition of the gasoline tax in the present case to be violative of the federal instrumentality doctrine.

Appellant urges further that the imposition of the tax in this case would permit the state to tax an Indian tribe or Indians indirectly when it cannot do so directly. A similar argument was urged in the *Department of Revenue v. Hane Const. Co. Inc.,* 115 Ariz. 243, 564 P.2d 932, (1977), a case which involved the imposition of a transactional privilege tax upon a contractor doing construction work on an Indian reservation pursuant to a Bureau of Indian Affairs contract. The Supreme Court of Arizona stated:

This tax, however, is not a tax on Indian income, property or lands. The tax falls upon the contractor and cannot legally be shifted to anyone else, *Tower Plaza Investments Limited v. DeWitt,* 109 Ariz. 248, 508 P.2d 324 (1973). As we have seen, the contracts under which it was in fact paid were funds generated by a contract with the Bureau of Indian Affairs, not with the Indians.

The only effect upon the Indians suggested by the contractor is remote indeed. The appellee theorizes that if in the long run the tax were to be imposed, it would increase B.I.A. contract prices and leave less money available for the direct benefit of the Indians. Such a result, were it to occur, would still be a far cry from a direct passing of the tax on to the tribe. There is authority that even when the tax is directly passed on to the Indians, the tax is nevertheless valid. *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971), cert. denied 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). Moreover, in this case, since the appellee itself absorbed the tax and did not seek any reimbursement from the government, the contract price was not affected one iota by the imposition of the tax, and the tax itself had not the slightest effect upon Indian property or lands. 115 Ariz. at 245, 564 P.2d at 934.

This court is persuaded that this reasoning is applicable to the facts in this case and disposes of appellant's argument that a tax on the contractor is an indirect tax on an Indian tribe.

We conclude, therefore, that the state has jurisdiction to tax and that the tax is valid, as it is not a tax upon an Indian tribe, an Indian, or Indian property on an Indian reservation.

Having concluded that the state has jurisdiction it is necessary to determine whether the Department of Revenue has authority to tax appellant pursuant to SDCL 10–48 under the facts of this case.

■ Appellant contends that the use fuel tax cannot be assessed under SDCL 10–48–2[3] because the fuel was not used on a "public highway" as defined in SDCL 10–48–1(3),[4] citing the case of *Dave Gustafson & Co. v. State,* 84 S.D. 238, 169 N.W.2d 722 (1969). However, the basis for the imposition of the tax upon appellant in this case arises by virtue of SDCL 10–48–2.1[5], which provides:

> The excise tax shall be paid by the person, firm, or public or private corporation on any fuel used in any highway construction work performed under a contract which is paid for all or in part from public funds, regardless of whether such fuel is consumed on the public highways or not.

The statute is unambiguous, and we see no reason for attempting a strained or forced construction of the words used therein. A finding that the roads constructed by appellant are public highways is not a requisite to the imposition of the tax under SDCL 10–48–2.1.

■ Appellant further contends that the monies used in payment of these contracts were not public funds as required by the statute. It is commonly understood that "public funds" are monies belonging to the United States or corporate agencies of the Federal Government, a state or subdivision thereof, or a municipal corporation. Public funds represent monies raised by operation of law for support of the government, or for discharge of its obligations. *Wood Bros. Const. Co. v. Bagley,* 232 Iowa 902, 6 N.W.2d 397 (1942). In the present case the contracts are with the Bureau of Indian Affairs, not with the tribe; the funds are not Indian monies but are an appropriation of public monies. See *Scholder v. United States,* 428 F.2d 1123 (9th Cir. 1970) cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246, *Department of Revenue v. Hane Const. Co. Inc.,* 115 Ariz. 243, 564 P.2d 932 (1977), *G. M. Shupe Inc. v. Department of Revenue,* 89 N.M. 265, 550 P.2d 277 (1976).

■ Finally, appellant contends that it was not the intent of the Legislature to tax the construction in this case. Appellant argues that under South Dakota Constitution, Article 11, Sec. 8,[6] and SDCL 10–48–57,[7] and SDCL 31–5–8,[8] there is an ear-

3. SDCL 10–48–2 provides:
   An excise tax is hereby imposed on all users of fuel upon the use of such fuel by any person within this state only when such fuel is used in an internal combustion engine for the generation of power to propel motor vehicles of any kind or character on the public highways at the rate of seven cents per gallon, except liquefied petroleum gases which shall be at the rate of six cents per gallon, each to be computed in the manner hereinafter in this chapter set forth.

4. SDCL 10–48–1(3) provides:
   "Public highways" shall mean and include every way or place, of whatever nature, generally open to the use of the public as a matter of right for the purposes of vehicular travel and notwithstanding that the same may be temporarily closed for the purpose of construction, reconstruction, maintenance or repair.

5. SDCL 10–48–2.1 was not in effect at time of the decision in *Gustafson,* supra, but was subsequently enacted in 1969 and was later amended in 1973.

6. South Dakota Constitution, Article 11, Sec. 8 provides:
   No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied, and the proceeds from the imposition of any license, registration fee, or other charge with respect to the operation of any motor vehicle upon any public highways in this state and the proceeds from the imposition of any excise tax on gasoline or other liquid motor fuel except costs of administration and except the tax imposed upon gasoline or other liquid motor fuel not used to propel a motor vehicle over or upon public highways of this state shall be used exclusively for the maintenance, construction and supervision of highways and bridges of this state.

7. SDCL 10–48–57 provides:
   The tax imposed by § 10–48–2 is levied for the purpose of providing revenue to be used by this state to defray in whole or in part, the cost of constructing, widening, reconstructing, maintaining, resurfacing, supervising and repairing the public highways of this state and the cost and expense incurred in the administration and enforcement of this chapter and for no other purpose whatsoever.

8. SDCL 31–5–8 provides:

marking of funds derived from the use taxes, and such funds are to be expended for the maintenance, construction and repair of state highways. Since the state has no obligation to maintain the reservation highways in question, appellant contends that the imposition of the use fuel tax is improper in this case. While the cited provisions specify the purpose and use to be made of such funds, there is no requirement that the funds be expended in the area in which the funds were collected. Further, as counsel for the Department of Revenue indicated in his brief, appellant's excerpt from Article 11, Section 8 did not include the provision therein which specifically excepts from such earmarking the tax imposed upon gasoline and other liquid motor fuel not used to propel a motor vehicle over or upon public highways of this state.

The facts indicate that appellant is a private corporation that used fuel in the construction of highways which were paid for from public funds. The facts satisfy the criteria necessary for the imposition of the tax under SDCL 10–48–2.1. The statute is clear and unambiguous on its face and would be declared void only if the subject of the tax is governed by substantial regulation or if the imposition of the tax will infringe upon the Indian right of self government.

We affirm the trial court's decision upholding the ruling of the Department of Revenue.

WOLLMAN, C. J., and DUNN, ZASTROW and MORGAN, JJ., concur.

HOYT, Circuit Judge, sitting for PORTER, J., disqualified.

All moneys levied, and collected by the state by general state taxation for state highway purposes, or received from the sale of bonds, or appropriated for state highway purposes, shall be expended only in the laying out, marking, constructing, reconstructing, or maintaining public highways forming the trunk highway system except such sums as are required for the maintenance of the board of transportation as provided in chapter 31–2, and except that twenty-five per cent of all such funds accruing to the state highway fund, other than from federal funds, shall be at the disposal of the department in marking, constructing, reconstructing, repairing or maintenance of highways of the state.