625 P.2d 1225

**RAMAH NAVAJO SCHOOL BOARD, INC. and Lembke Construction Company, Inc., Plaintiffs-Appellants,**

v.

**BUREAU OF REVENUE, State of New Mexico, Defendant-Appellee.**

**No. 4302.**

Court of Appeals of New Mexico.

July 1, 1980.

Rehearing Denied July 11, 1980.

Michael P. Gross, Ronald J. Van Amberg, Solomon, Roth & Van Amberg, Santa Fe, for plaintiffs-appellants.

Jeff Bingaman, Atty. Gen., Gerald B. Richardson, Asst. Atty. Gen., Taxation & Revenue Dept., Santa Fe, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

Lembke (Lembke Construction Company, Inc.) contracted with the School Board (Ramah Navajo School Board, Inc.) to build a school and related facilities on Indian land. The various contracts provided that Lembke was to pay New Mexico's gross receipts tax and Lembke has done so. Lembke and the School Board sued for a refund of these taxes. Section 7–1–26(A), N.M.S.A.1978 (Repl.Pamph.1979). Lembke has agreed to pay over to the School Board any rebate or recovery it might realize as a

result of this suit for a refund. There is no issue as to proper parties. The trial court ruled in favor of the State, plaintiffs appeal. There are two issues: (1) the propriety of imposing the gross receipts tax and (2) the applicability of § 7–9–54, N.M.S.A.1978.

*Propriety of Imposing the Gross Receipts Tax*

█ Lembke is in the business of general construction and contracting. Moneys received for this activity are "gross receipts". Section 7–9–3(F), N.M.S.A.1978 (1979 Cum. Supp.). A tax is imposed on these gross receipts "[f]or the privilege of engaging in business * * * in New Mexico." Section 7–9–4, N.M.S.A.1978 (1979 Cum.Supp.).

The School Board is a non-profit corporation, incorporated under New Mexico law. The School Board is entirely operated by members of the Ramah Navajo Chapter, which is a local unit of government of the Navajo Indian Tribe. For the limited purpose of entering contracts with or receiving grants from the Bureau of Indian Affairs, the School Board is a Navajo Tribal organization. 25 U.S.C. § 450b(c) (1979 Supp. Pamph.).

The Bureau of Indian Affairs contracted with the School Board for actual construction of the school facilities; in turn, the School Board contracted with Lembke. All the construction money came from the federal government through specific congressional appropriations to the School Board.

There is no claim that New Mexico's gross receipts tax was directly imposed on the School Board; the tax was on the gross receipts of Lembke for the privilege of doing business. The contracts between the School Board and Lembke were cost-plus contracts. Pursuant to those contracts, the School Board paid Lembke an amount that included the tax and Lembke, in turn, paid the State. Thus the School Board has indirectly sustained the financial burden of the tax.

█ Lembke and the School Board challenge the imposition of the tax because the financial burden of the tax is on the School Board. We have held that the legal incidence of the gross receipts tax is upon one in the position of Lembke, *First Nat. Bank of Santa Fe v. Commissioner of Rev.*, 80 N.M. 699, 460 P.2d 64 (Ct.App.1969); that a non-Indian, such as Lembke, is not exempt from state taxation because the receipts taxed were derived from activity on Indian land, *G. M. Shupe, Inc. v. Bureau of Revenue*, 89 N.M. 265, 550 P.2d 277 (Ct. App.1976); *Tiffany Const. Co., Inc. v. Bureau of Revenue*, 93 N.M. 593, 603 P.2d 332 (Ct.App.1979); that federal law did not preempt imposition of the tax, *Shupe*, supra; that the tax did not infringe on the right of reservation Indians to make their own laws and be governed by them, *Shupe*, supra; and that New Mexico's disclaimer to all rights and title to Indian lands did not bar imposition of the tax, *Shupe*, supra.

Lembke and the School Board suggest that we disregard New Mexico decisions, particularly the decision as to the incidence of the tax. Federal decisions have reached the same result as New Mexico. The legal incidence of the tax is on Lembke, the tax does not interfere with tribal self-government, the tax is not a tax on the Indian tribe or tribal property and federal laws do not preempt the tax. See *Mescalero Apache Tribe v. O'Cheskey*, 439 F.Supp. 1063 (D.N.M.1977), aff'd by the 10th Circuit June 5, 1980, 625 F.2d 967.

Both federal decisions recognized the indirect burden of the tax was on the Indians but, nevertheless, sustained the New Mexico tax. In so doing, the 10th Circuit cited, with approval, its decision in *United States v. State of N. M.*, 581 F.2d 803 (10th Cir. 1978) where there was a cost-plus contract, and where the indirect and ultimate burden of the tax was on the United States government. Here there is a cost-plus contract and the ultimate economic burden was on the School Board. The federal district court decision recognized that the indirect burden reduced the money that the Indians could spend, but held this burden was not prohibited by decisions of the United States Supreme Court nor preempted by federal legislation.

■ Lembke and the School Board would distinguish the federal decisions on the basis that school facilities are involved and that school facilities require a different result. They refer us to provisions in the treaty with the Navajos whereby the federal government was to provide schools and to congressional appropriations for these particular school facilities. Our answer, suggested by *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), is that the appropriations for these specific school facilities do not show an intent to prohibit New Mexico from taxing the gross receipts of the non-Indian contractor who builds the school.

■ Lembke and the School Board also contend that New Mexico may not impose its gross receipts tax upon Lembke's receipts absent specific federal legislation authorizing the tax. This contention is based on the view in *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) that absent express authority from Congress, a state may not tax Indians or Indian property. The application of the gross receipts tax to Lembke does not require express authority from Congress because the tax is not on Indians or Indian property. The tax is on Lembke's gross receipts; the fact the indirect burden of the tax is on the Indian School Board is not a basis for holding that express authority from Congress is required for its imposition.

The trial court correctly ruled that the tax was applicable to Lembke's gross receipts.

*Applicability of Section 7–9–54, supra*

Section 7–9–54, supra, provides:

Receipts from selling tangible personal property * * * to the governing body of an Indian tribe * * * for use on Indian reservations * * * may be deducted from gross receipts. That portion of the receipts from performing a service as defined in Subsection K of Section 7–9–3 NMSA 1978 which reflects the value of tangible personal property utilized or produced in performance of such service is not deductible.

Lembke and the School Board claim that Lembke was entitled to a deduction under § 7–9–54, supra, for Lembke's gross receipts based on the cost of materials and other tangible property used in construction of the school facilities.

■ They contend that the School Board really purchased such items. Their theory is that when Lembke purchased such items, it purchased them as agent of the School Board. The trial court found that, under the contracts, Lembke was required to purchase and pay for such items; that Lembke purchased such items in its own name and paid for them; that Lembke had no authority to and did not pledge the credit of the School Board or the Navajo Tribe; that the School Board was never a disclosed purchaser of such items nor was the School Board billed for the items by the supplier and that title to such items, under the contracts, did not pass to the School Board until it paid Lembke. These findings are supported by substantial evidence; these findings support the conclusion that Lembke did not act as agent for the School Board in purchasing materials for the construction project. Contrast the federal district court decision in *Mescalero Apache Tribe v. O'Cheskey, supra.*

■ Lembke and the School Board contend that if Lembke did not purchase materials as agent for the School Board, then Lembke sold the materials to the School Board and, having sold the materials, Lembke performed no service and therefore there should have been a deduction for materials sold. This argument disregards the finding, supported by substantial evidence, that Lembke was not in the business of selling construction materials and only sells construction materials as part of a construction project in which the materials have been incorporated.

The applicable portion of § 7–9–3(K), supra, reads:

"Service" includes construction activities and all tangible personal property that will become an ingredient or component part of a construction project.

**712**

This statutory provision answers the claim that Lembke provided no "service". Inasmuch as the tangible materials included within the construction project were part of Lembke's service, the last sentence in § 7–9–54, supra, quoted above, applies and there was no deduction.

 Lembke and the School Board also claim a deduction on the basis of another provision in § 7–9–3(K), supra. This provision states:

> [S]ales of tangible personal property that will become an ingredient or component part of a construction project *to persons engaged in the construction business* are sales of tangible personal property[.] (Our emphasis.)

The claim is that the School Board was engaged in the construction business and, therefore, was entitled to a deduction under § 7–9–54, supra.

The claim that the School Board was engaged in the construction business is spurious. The School Board's contract with the Bureau of Indian Affairs did name the School Board as the contractor; however, the School Board's contract with Lembke named Lembke as the contractor and the School Board as the owner. The School Board incorporated no tangible personal property into a construction project. The above-quoted provisions from § 7–9–3(K), supra, refer to persons engaged in construction, that is, building the building. Lembke built the building, the School Board did not.

The trial court properly denied a deduction under § 7–9–54, supra.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

HERNANDEZ and ANDREWS, JJ., concur.