ANDERSON, Appellant, v. BRULE COUNTY,
SOUTH DAKOTA, et al, Respondents

(292 N. W. 429.)

(File No. 8342.   Opinion filed June 11, 1940.)

Rehearing Denied July 26, 1940.

**Roy Rietz** and **Fred D. Shandorf,** both of Mitchell, for Appellant.

**E. R. Slifer** and **M. A. Brown,** both of Chamberlain, for Respondents.

SMITH, P.J.   Predicated upon the theory that the tract known as "King's Addition" never became a part of the city of Chamberlain, South Dakota, or of the Independent District of Chamberlain, plaintiff brought this action against Brule County, the city, and the school district, on behalf of herself and other owners of property within the questioned addition, seeking to enjoin the levy and collection of municipal and school taxes.   Findings, conclusions, and judgment were for defendants, and plaintiff appeals.

The city was incorporated by special act of the Legislature of the Territory of Dakota in 1883.   On March 7, 1885, by an act amending the act of 1883, the Territorial Legislature purported to extend the city limits so as to include the tract here involved.   The validity of that amendatory act constitutes the first issue for our determination.   Because of the unquestioned fact that the property thus sought to be incorporated within the city limits was then embraced within the Great Sioux Reservation (Cf. Treaty of April 29, 1868,

15 Statutes, 635; King v. McAndrews et al., C.C., 104 F. 430, and Id., 8 Cir., 111 F. 860, 861; Sanford, City Mayor, et al. v. King, et al., 19 S. D. 334, 103 N. W. 28), plaintiff asserts that the Territorial Legislature was without power to include it within the city limits. The presentation of the case here proceeds upon the assumption that the limits of the city are determinative of those of the school district.

It is said that territorial jurisdiction over the reservation is proscribed by section 1 of the Organic Act of the Territory of Dakota, 12 Stat. at L. 239, SDC Vol. II, p. 45. Among other things, that section provides "* * * That nothing in this act contained shall be construed * * * to include any territory which, by treaty with any Indian tribe, is not, without the consent of said tribe, to be included within the territorial limits or jurisdiction of any State or Territory; but all such territory shall be excepted out of the boundaries and constitute no part of the Territory of Dakota, until said tribe shall signify their assent to the President of the United States to be included within the said Territory, * * *."

This contention finds support in obiter expressions contained in Ex parte Crow Dog (Ex parte Kan-gi-shun-ca), 109 U. S. 556, 3 S. Ct. 396, 397, 27 L. Ed. 1030. In that case the court said: "The reservation of the Sioux Indians, lying within the exterior boundaries of the territory of Dakota, was defined by article 2, of the Treaty concluded April 29, 1868 (15 St. 635), and by section 1839 Rev. St., it is excepted out of and constitutes no part of that territory." And see special concurring opinion of the late Judge John Howard Gates in the case of Lebo v. Griffith, 42 S. D. 198, 173 N. W. 840.

■■ Research discloses that certain of the treaties concluded between the Indians and the United States contained an express agreement that the reserved lands should not be included within the bounds of any state or territory. In the case of Langford v. Monteith, 102 U. S. 145, 26 L. Ed. 53, and in Utah & Northern Railway Company v. Fisher, 116 U. S. 28, 6 S. Ct. 246, 29 L. Ed. 542, wherein the court

was dealing with a provision contained in the Organic Act of Idaho similar to that cited from the Organic Act of Dakota, the court makes it plain that such provision was only inserted in the Organic Acts to exclude from the boundaries of a proposed territory those reservations governed by treaties which contained an agreement that such lands should not be included within a territory or state. Interpreted in their ordinary sense, the words we have quoted from the Organic Act furnish support for the view expressed in those cases. That language does not purport to exclude all Indian reservations. It deals only with "territory which, by treaty with any Indian tribe, is not * * * to be included within * * * any State or Territory." In view of the fact that we find no agreement in the treaty with the Sioux restraining the inclusion of that reservation in any state or territory (Cf. 15 Stat. at L., 635, supra, and Report of Senate Committee on Indian Affairs, 49th Congress, 1st Session, Report 1278, part 3), we have been unable to reconcile the views expressed in these three opinions of the Supreme Court of the United States. We have concluded that the opinion in Ex parte Crow Dog, supra, must have been considered under a misapprehension as to the contents of the treaty with the Sioux, and we have determined to follow the views expressed in Langford v. Monteith and Utah & Northern Railway v. Fisher, supra, and hold that the Sioux reservation as marked out in the treaty concluded on April 29, 1868 became a part of the territory of Dakota and therefore became subject to the exercise by that territory of a limited governmental jurisdiction. Cf. Board of Commissioners of Yellowstone County v. Northern Pac. Ry. Co. et al., 10 Mont. 414, 25 P. 1058. From which it follows that we are of the opinion that the Territorial Legislature was well within the scope of its powers in extending the limits of the city of Chamberlain so as to embrace the questioned addition. Obviously, we are not here concerned with the measure of power to be exercised. If the territory was authorized to exercise any governmental jurisdiction over the reservation, its legislative powers were such (Cf. Territory of Dakota ex rel. McMahon v. O'Connor, 5 Dak. 397, 41 N.

W. 746, 3 L. R. A. 355) as to permit it to select the agency or agencies through which it would act.

■ Plaintiff contends that King v. McAndrews et al., 8 Cir., 111 F. 860, 861, and Sanford, City Mayor, et al., v. King et al., supra, and City of Chamberlain v. King, 24 Land Dec. Dep. Int. 526, hold that the Territorial legislative act of 'March 7, 1885 was invalid and that the issue thus determined is res judicata between, the parties to this cause. We are unable to read such a holding from the opinion in either of the first two cases cited. In both instances the court was dealing with the patent from the United States to the tract here involved, and arrived at its conclusion without regard to the validity or invalidity of the act extending the corporate limits of Chamberlain. In the absence of an assignment of error and a supporting record raising the question, we are not required to deal with the contention that the issue is res judicata by the Land Department decision.

Did the subsequent Enabling Act of 1889, 25 Stat. at L., 676, SDC Vol. II, p. 35 and the Constitution of South Dakota, SDC Vol. II, p. 51, operate to withdraw this portion of the Indian reservation from the limits of the city of Chamberlain? Plaintiff cites the following provisions:

"That the people inhabiting said proposed states do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian Tribes; and ·that until the title thereto shall have been extinguished by the United States, * * * and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States; * * *." § 4, second provision, Enabling Act of 1889, supra.

"That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundary of South Dakota, and to all lands lying within said limits owned or held by any Indian or Indian Tribes; and

that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States; and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States; * * *." Section 2, Article 22, Constitution of South Dakota, supra.

This contention of plaintiff fails to gain our assent. That these and similar provisions in other enabling acts and constitutions of the several states were inserted for the purpose of maintaining ample supreme powers on the part of the United States to permit it to fully respond to its legal and moral obligations to the Indians rather than for the purpose of withholding power from the states to exercise jurisdiction over the reservations, and that it was intended the states should exercise a limited jurisdiction over Indian reservations within their exterior boundaries, are settled propositions. Draper v. United States, 164 U. S. 240, 17 S. Ct. 107, 41 L. Ed. 419; Lebo v. Griffith, supra; King v. McAndrews, supra, C. C., 104 F. 430; State ex rel. Tompton et al. v. Denoyer et al., 6 N. D. 586, 72 N. W. 1014; State ex rel. Baker v. Mountrail County, 28 N. D. 389, 149 N. W. 120; Porter et al. v. Hall, 34 Ariz. 308, 271 P. 411; Red Hawk v. Joines, 129 Or. 620, 278 P. 572, 577; 31 C. J. 531. The jurisdiction of the state being established, the power to employ the city of Chamberlain as an agency for the administration of local state affairs is not subject to question.

Finding no error in the record, the judgment of the trial court is affirmed.

All the Judges concur.