361 P.2d 950

**YOUR FOOD STORES, INC. (NSL), a New Mexico Corporation, Plaintiff-Appellant,**

**v.**

**VILLAGE OF ESPANOLA, New Mexico, a municipal corporation, and Robert Valdez, Commissioner of the Bureau of Revenue of the State of New Mexico, Defendants-Appellees.**

No. 6716.

Supreme Court of New Mexico.

April 10, 1961.

Rehearing Denied June 8, 1961.

Catron & Catron, John S. Catron, Santa Fe, for appellant.

Edwin L. Felter, Santa Fe, for appellees.

Standley & Kegel, Santa Fe, on motion for rehearing, for appellees.

Dazzo, Dazzo & Brophy, Albuquerque, amicus curiae.

NOBLE, Justice.

The single question for determination is whether a municipality may lawfully extend its corporate limits to include lands of an Indian tribe and to enforce, within such lands, a municipal sales tax against a business located upon land leased from the Indian tribe.

No question is raised as to validity of the sales tax ordinance nor as to the annexation proceedings if the municipality could legally annex Indian lands.

It is contended that the jurisdiction of the State of New Mexico does not extend to lands owned or held by a Pueblo Indian tribe; that the purported annexation of such lands is void, and that the municipal sales tax ordinance is enforceable only within the municipal boundaries.

The Santa Clara Pueblo owns and occupies a tract of land as communal or tribal lands patented to the Pueblo by the United States pursuant to an Act of Congress confirming a claim of a grant to the Indian tribe by the King of Spain, a former sovereignty. Appellant occupies and operates a supermarket and variety store upon a portion of the Indian lands, contiguous to the Village of Espanola, sub-leased to appellant from a lessee of the Pueblo with approval of the Secretary of the Interior.

In 1955 the Village of Espanola purported to extend its boundaries, pursuant to § 14–6–11, N.M.S.A. 1953 Comp., to include the land leased by appellant and other lands,

and in 1959, by Ordinance No. 132, imposed a municipal sales tax upon sales and services within its corporate limits.

It is not questioned that a municipality is granted power to levy and collect a municipal sales tax only within its corporate limits, § 14–42–25, N.M.S.A. 1953 Comp., and that if these lands were not validly brought within the corporate limits the tax cannot be collected from appellant. The case proceeds here upon the assumption that the limits of the village are determinative of those within which the sales tax may be imposed. The trial court predicated its dismissal of the complaint seeking to enjoin collection of the tax upon three principal grounds: First, that by virtue of the lease to appellant the Santa Clara Pueblo divested itself of the right of possession, dominion and control of the lands included in the lease; second, that the municipality, had the legal right and did lawfully annex the lands, and that the same became a part of the municipality for all purposes and subject to all ordinances, regulations and taxes, not inconsistent with the Constitution and laws of the United States, or with the right of self-government of the Indian members of the Santa Clara Pueblo; and, third, that the sales tax does not impose any burden upon a federal instrumentality, upon the Santa Clara Pueblo or the Indian members thereof, and does not conflict with the Constitution of the United States nor with the right

of self-government of the Santa Clara Pueblo Indians.

We are, thus, first brought to a consideration of the status of Indian tribes, Indian lands, and the jurisdiction of the State of New Mexico, by legislation to exercise control over Indians living on a reservation or lands owned by Indian tribes. It is clear that if the State itself cannot impose its laws on the Pueblo, the Village of Espanola, as a political subdivision of the State, cannot be conferred powers which the State itself does not possess. Munro v. City of Albuquerque, 48 N.M. 306, 150 P.2d 733.

The early landmark case of Worcester v. Georgia, 1832, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483, in an exhaustive opinion by Chief Justice Marshall, developed that the Indian tribes are distinct political entities, with the right of self-government, having exclusive authority within their territorial boundaries and are not subject to the laws of the State in which they are located nor to federal laws except where federal laws or the jurisdiction of courts is expressly conferred by federal legislation. The court there held invalid a Georgia statute prohibiting and making it an offense for a non-Indian to go upon lands of an Indian reservation, as invading the right of the Indians to self-government.

The broad principles of the Worcester decision have been adhered to by the federal courts ever since. The Kansas Indi-

ans, 5 Wall. 737, 18 L.Ed. 667; Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L. Ed. 1030; United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; United States v. Forness, 2 Cir., 125 F.2d 928; Iron Crow v. Oglala Sioux Tribe, 8 Cir., 231 F.2d 89. These basic principles were reaffirmed as late as Williams v. Lee, 1959, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251.

The early policy of leaving Indians free from state jurisdiction and control is deeply rooted in our nation's history. Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367.

Without quoting extensively from the many decisions of the Supreme Court of the United States determining the jurisdiction of states and of state and federal courts over Indians, we think the decisions are well summarized in Felix S. Cohen's Handbook of Federal Indian Laws, and is thus stated at page 122:

> "Section 2. The Derivation of Indian Powers. From the earliest years of the Republic the Indian tribes have been recognized as *distinct,* independent political communities' * * * and as such qualified to exercise powers of self-government, not by virtue of any delegation of powers from the Federal Government, but rather by reason of their original tribal sovereignty.
>
> *       *       *       *       *       *

"The whole course of judicial decision on the nature of Indian tribal powers is marked by adherence to three fundamental principles: (1) An Indian tribe possesses, in the first instance, all the powers of any sovereign state. (2) Conquest renders the tribe subject to the legislative power of the United States and, in substance, terminates the external powers of sovereignty of the *tribe,* e. g. its power to enter into treaties with foreign nations, but does not by itself affect the internal sovereignty of the tribe, i. e. its powers of local self-government. (3) These powers are subject to qualification by treaties and by express legislation of Congress, but save as thus expressly qualified, full powers of internal sovereignty are vested in the Indian tribes and in their duly constituted organs of government."

■ To our minds, the terms upon which New Mexico was admitted as one of the States of the Union and Article XXI, Sec. 2 of our Constitution, left no room for a claim by the state to governmental power over the Indians or Indian lands, except where such jurisdiction has been specifically granted by Act of Congress, or sanctioned by decisions of the Supreme Court of the United States. The pertinent part of section 2 of the Enabling Act reads:

"Second. That the people inhabiting said proposed state do agree and declare that they forever disclaim all right and title * * * to all lands lying within said boundaries owned or held by any Indian or Indian tribes the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that until the title of such Indian or Indian tribes shall have been extinguished the same shall be and remain * * * under the absolute jurisdiction and control of the Congress of the United States * * *."

That compact between New Mexico and the United States was carried out by adoption of Article XXI, Sec. 2, of the State Constitution. The Pueblo Indians have the same right of self-government as other Indian tribes. The Indian Reorganization Act, 48 Stat. 984, as amended, 25 U.S.C.A. § 461 et seq. See United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107; United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023; Toledo v. Pueblo de Jemez, D.C., 119 F.Supp. 429; The Pueblo Lands Act, 43 Stat. 636, 28 U.S.C.A. § 331 note. That the provisions of the Enabling Act and New Mexico Constitution were intended to apply to Pueblo Indians cannot be doubted. Section 2, subd. 8 of the Enabling Act provided:

"Eighth. * * * and the terms 'Indian' and 'Indian country' shall include the Pueblo Indians of New Mexico and the lands now owned or occupied by them"

It has been suggested that the silence of Congress to enact legislation defining where jurisdiction rests in specific matters discloses no objection by Congress to the operation of state laws over Indians and Indian lands. That, at least, can no longer be said to be a valid construction. Indian tribes were given the right of self-government by Congress. Wheeler-Howard Act, 25 U.S.C.A. § 476, which reads:

"Any Indian tribe, or tribes, residing on the same reservation, shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, which shall become effective when ratified by a majority vote of the adult members of the tribe, or of the adult Indians residing on such reservation, as the case may be, at a special election authorized and called by the Secretary of the Interior under such rules and regulations as he may prescribe * * *."

The Santa Clara Pueblo adopted and acts under a written constitution. Federal Indian Law, p. 915. It is conceded that the Santa Clara Pueblo is self-governing. We think that the Pueblo Indian tribes possess inherent sovereignty except where it has been specifically taken from them by congressional action. This is ad-

ditionally attested to by the fact that Congress did specifically act in 1953 to give its consent to the State to assume jurisdiction over the Indians within its boundaries, but prohibited the State from exercising such jurisdiction until the State should amend its Constitution or statute, as the case may be, removing any legal impediment to such assumption of jurisdiction. Act of August 15, 1953, c. 505, §§ 6 and 7, 67 Stat. 590, 28 U.S.C.A. § 1360 note. New Mexico has not seen fit to amend section 2 of Article XXI of the Constitution and has not accepted jurisdiction over the Indians.

Appellee relies upon Anderson v. Brule County, 67 S.D. 308, 292 N.W. 429, holding that the provisions of an enabling act identical with that of New Mexico were inserted to permit supreme powers by the United States to fulfill its obligations to the Indians rather than to withhold power from the states to exercise jurisdiction over Indian reservations, and that it was intended that the states should exercise limited jurisdiction over such Indian reservations unless Congress specifically acted on the subject. That court sustained the right of the State to include Indian lands within the corporate limits of a municipality. The reasoning there expressed is contrary to the expressed intention and construction by Congress, 67 Stat. 590; contrary to our decision in State v. Begay, 63 N.M. 409, 320 P.2d 1017; and is denied by the Supreme Court of the United States in

Williams v. Lee, supra, where it was said [358 U.S. 217, 79 S.Ct. 271]:

"Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction which Worcester v. Georgia had denied."

Examples of express grants of the exercise of jurisdiction by states denied them by Worcester v. Georgia, supra, are the Acts of Congress making various state laws, such as laws respecting health and education, applicable on Indian reservations. Title 25 U.S.C.A. § 231.

Those decisions relied upon by appellee which have recognized the right of a state or its political subdivisions to annex lands acquired by the United States for necessary governmental installations are distinguishable. They do not rest upon the right of self-government by the residents thereof. Likewise, those decisions which sanction the jurisdiction of state courts when invoked by an Indian against a non-Indian or between two non-Indians with respect to a transaction occurring on an Indian reservation do not support the contention of jurisdiction to include Indian lands within the boundaries of a municipality so as to make such lands subject to the rules, regulations or ordinances of the municipality. Suits by Indians against non-Indians in state courts, have been sanctioned by the United States Supreme Court,

Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719. And non-Indians who committed crimes against each other on a reservation may be tried in the state courts. State of New York ex rel. Ray v. Martin, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261. These are modifications of the principles of Worcester v. Georgia, supra, made over the years by the Supreme Court of the United States as not jeopardizing the rights of Indians nor involving essential tribal relations or the right of self-government. Williams v. Lee, supra.

Although not relied upon by appellee, we notice three decisions of this court concerning the jurisdiction of the state courts over reservation Indians. In Trujillo v. Prince, 42 N.M. 337, 78 P.2d 145, the personal representative of a reservation Indian was permitted to invoke the jurisdiction of a state court and the protection of the New Mexico Wrongful Death Statute against a non-Indian. This comes within one of the few modifications of the doctrine of Worcester v. Georgia, supra. Martinez v. Martinez, 49 N.M. 83, 157 P.2d 484, allowed the state court as successor to the territorial court to enforce a consent decree entered by the territorial court in 1893 adjudicating water rights of a Pueblo, in which the Pueblo was represented by an attorney employed by the United States. Indians are bound by the decisions of the state courts if they invoke its jurisdiction. United States v. Candelaria, supra.

This court sustained the jurisdiction of the state court in Tenorio v. Tenorio, 44 N.M. 89, 98 P.2d 838, in a divorce action between two Pueblo Indians living on Pueblo Indian lands.

While Anderson v. Brule County, supra (decided June, 1940) does not cite Tenorio v. Tenorio, supra (decided January, 1940), both rest largely upon the same reasoning, i. e., the failure of Congress to act specifically amounted to an implied consent to the exercise of State jurisdiction. However, our decision in Tenorio v. Tenorio, supra, was prior to enactment by Congress of 67 Stat. 590, authorizing exercise of State jurisdiction over Indians only after adoption of an amendment to the State Constitution accepting such jurisdiction, Whyte v. District Court, 140 Colo. 334, 346 P.2d 1012; is contrary to our later decision in State v. Begay, supra, and the jurisdiction there sustained has since been expressly denied by Williams v. Lee, supra.

It is urged and the trial court concluded that by virtue of its lease "the Santa Clara Pueblo divested itself of the right of possession, dominion, and control of said lands during the time such lands were subject to said mesne leases." We cannot agree. Whatever rights the Pueblo may have divested itself of, the title of the Indians was not thereby extinguished within the meaning of either the Enabling Act or the Constitution so as to vest the State

with jurisdiction. In State v. Begay, supra, an easement was granted the State for a highway through the Navajo reservation, but we said respecting State jurisdiction over an Indian arrested for a traffic violation on the highway within the reservation [63 N.M. 409, 320 P.2d 1019]:

"We hold that the authority under which the State was permitted to construct Highway 666 through, and over, the Navajo Indian reservation failed to extinguish the title of the Navajo Indian Tribe."

Appellee further seeks to justify the right to exact the sales tax by contending that Congress has specifically authorized the imposition of a sales tax by the Buck Act, Title 4 U.S.C.A. § 105(a) which reads:

"(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority thereon, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such state to the same extent and with the same effect as though such area was not a Federal area."

Section 110(e) of the Act defines Federal Area:

"The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; * * *."

By the statutory definition of "Federal Area" it is obvious this statute does not give the states permission to levy a sales tax upon Indian lands. These lands are not lands or premises held or acquired for use of the United States or any department, establishment or agency of the United States. Additionally, section 105 (a) limits the right to levy a sales tax to a "taxing authority * * * having jurisdiction to levy such a tax." If the municipality was without jurisdiction to annex the Indian lands it is not a taxing authority with jurisdiction to levy such taxes within the Indian lands.

The principal concern, however, in the instant case is not whether the property of non-Indians located on a reservation may be taxed either by the State or its political subdivisions, but, rather, whether the Pueblo lands may lawfully be annexed to and be made a part of a municipality theretofore lying outside the boundaries of such Indian lands. It is not the taxation of non-Indian property that would infringe upon the rights of the Indians to self-government, but that of making that

portion of the Indian territory subject to legislative action by the municipality. It is clear that the State of New Mexico has no power to legislate for the Pueblo nor to make its people subject to state laws, Toledo v. Pueblo de Jemez, supra, and if the State cannot impose its laws on the Pueblo it is equally clear that it cannot confer upon the Village of Espanola powers which the State itself does not possess. Munro v. City of Albuquerque, supra.

There has been no question since United States v. Sandoval, supra, that the Pueblo Indians do not derive their governmental powers from the State of New Mexico. Toledo v. Pueblo de Jemez, supra. It must, likewise, be conceded that two self-governing bodies cannot have dual and co-existent jurisdiction and control within the same territory at the same time. In re Sandia Conservancy District, 57 N.M. 413, 259 P.2d 577. They are not here exercising functions for different purposes within the same boundary.

■ Appellee argues that this is a collateral attack on the validity of the annexation proceeding and not permitted. We are familiar with the general rule that where there is authority and jurisdiction to annex territory to a municipality, its validity can not be questioned in a collateral proceeding by reason of defects, informalities and irregularities in the proceedings. It is different, however, when there is a complete lack of authority or jurisdiction. 2 McQuillan on Municipal Corporations (3rd Ed.) § 7.43 and cases cited. There being no authority or jurisdiction for the annexation it never had and does not now have any validity and may be collaterally attacked. Hillman v. City of Pocatello, 74 Idaho 69, 256 P.2d 1072; Barton v. Stuckey, 121 Okl. 226, 248 P. 592; Town of Griffing Park v. City of Port Arthur, Tex. Civ.App., 36 S.W.2d 593. It is admitted that the Santa Clara Pueblo did not sign the annexation petition.

§ 14–6–11, N.M.S.A.1953 Comp., provides that territory annexed to a municipality becomes a part of it for all purposes and is subject to its legislative action, but, appellee says this is intended to mean "for all lawful purposes," and that any legislative acts of the municipality in conflict with federal law or treaty obligations is not a lawful purpose. Counsel does not cite any authority to support this position, nor does he point out any other "lawful purpose" which would not infringe upon the right of self-government of the Indians, other than taxation against non-Indians. It is not an answer to say that no ordinance of the Village, except the municipal sales tax, shall be effective within the Indian lands within the Village. To follow appellee's argument to its logical conclusion would mean that there would have to be a court decision as to each ordinance in order to

determine that the same had "a lawful purpose" insofar as it affected Indian lands.

The only question before us is the power of a municipality to extend its municipal limits to include Indian lands and to enforce the collection of a municipal sales tax limited by statute to the municipal boundaries. The right of the State to tax non-Indians or their property located within an Indian reservation is not before us and we do not decide it.

We consider Williams v. Lee, supra, controlling. It was there said [358 U.S. 217, 79 S.Ct. 271]:

> "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them"

There, the right was denied a non-Indian to maintain an action, in the State court, against a reservation Indian for debt contracted on the reservation as infringing on the rights of Indians to govern themselves.

To paraphrase Williams v. Lee, supra, we conclude that to allow the exercise of jurisdiction by a municipality to annex a portion of the Indian Pueblo and make it subject to jurisdiction of the municipality would affect the authority of the tribal council over reservation affairs and, hence, would infringe on the right of the Indians to govern themselves. Especially is this true in view of the fact that New Mexico has been expressly granted the right by Congress to exercise jurisdiction over the Indians but only when the State amends its Constitution to remove the barrier to such exercise of jurisdiction, and that it has not assumed such jurisdiction in the manner provided by Congress. We can only assume that by its failure to take the necessary action to acquire jurisdiction it has determined it does not want to do so.

It follows that the purported annexation of the lands in question was void and that said property is not within the corporate limits of the Village of Espanola, and that the municipal sales tax cannot be collected from appellant.

The cause is reversed and remanded with instructions to vacate the judgment entered herein; to substitute as a party defendant the present and acting Commissioner of the Bureau of Revenue of the State of New Mexico, and to enter judgment restraining and enjoining the collection of the municipal sales tax as prayed for in the complaint, and for such other action as may be required not inconsistent with the views expressed herein.

It is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ and MOISE, JJ., concur.