Certiorari Granted, No. 31,791, August 12, 2009

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-086

Filing Date:   June 4, 2009

Docket Nos. 27,189; 27,333; 27,940

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

ARNOLD ATCITTY,

Defendant-Appellant,

Consolidated With

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

NORMAN JIM,

Defendant-Appellant,

and

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

MICHAEL BILLY,

Defendant-Appellant.

1

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
S. Erin Brunson, Assistant Appellate Defender
Santa Fe, NM

for Appellants

## OPINION

**BUSTAMANTE, Judge.**

**{1}** The question presented in these consolidated cases is whether the State has the authority to require an Indian, who: (1) was convicted of a sex offense in a court other than a New Mexico state court; (2) is an Indian living in Indian country; and (3) is not attending school or employed outside of Indian country, to comply with the State's Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 to -10 (1999, as amended through 2007). Defendants are enrolled members of the Navajo Nation who were convicted in federal court of sex offenses involving minors. The State, in separate proceedings, charged Defendants with failing to register as sex offenders as required by SORNA.

**{2}** Defendants each filed motions to dismiss for lack of jurisdiction. Defendants asserted that the State lacked the authority to impose the registration requirements of SORNA on an Indian living in Indian country. The district court denied the motions. Defendants entered conditional pleas of guilty while reserving their right to appeal jurisdictional issues. The district court thereafter entered judgments convicting each Defendant of failing to register as a sex offender. We reverse.

## BACKGROUND

**{3}** Defendant Arnold Atcitty (Atcitty) is an enrolled member of the Navajo Nation, which is a federally recognized Indian tribe. In 1998 Atcitty was convicted in federal court of a sexual offense against a minor. Pursuant to 42 U.S.C. § 14072 (1998), Atcitty was required to register with the FBI national sex offender database. The federal court specifically ordered Atcitty to "comply with any applicable registration requirements for sex offenders that exist in any jurisdiction in which [Atcitty] resides." In September 2004,

Atcitty's federal probation supervision was transferred from the state of Colorado to San Juan County, New Mexico. At all times relevant to this case, Atcitty (1) was domiciled on the Navajo Indian Reservation (the Reservation) near Shiprock, New Mexico; (2) was not employed outside the boundaries of the Reservation; and (3) was not attending school outside the boundaries of the Reservation.

**{4}** On October 13, 2004, Atcitty was placed in a detoxification facility located outside of the boundaries of the Reservation in Farmington, New Mexico. The record does not indicate how long Atcitty was treated at the detoxification facility. On January 19, 2005, the San Juan County Magistrate Court issued an arrest warrant for Atcitty for his failure to register as a sex offender pursuant to Section 29-11A-4(I). Atcitty was arrested outside the boundaries of the Reservation, in San Juan County.

**{5}** Defendant Norman Jim (Jim) is an enrolled member of the Navajo Nation. In 1998 Jim was convicted in federal court of a sex offense involving a minor for which registration is required under SORNA. The federal court ordered Jim to "comply with any applicable [sex offender] registration requirements [existing] in any jurisdiction in which [Jim] would reside" following his release from federal prison. Jim was released from prison on January 5, 2006, and was placed under the supervision of a federal probation officer working in San Juan County. At all times relevant to this case, Jim (1) was domiciled on the Reservation and within San Juan County; (2) was not employed outside the boundaries of the Reservation; (3) was not attending school outside the boundaries of the Reservation; and (4) maintained a mail box with an address in Fruitland, New Mexico, which is located outside the boundaries of the Reservation.

**{6}** Jim's probation officer notified him of the requirement to register as a sex offender within ten days of his release from prison. Jim failed to register as a sex offender with the San Juan County authorities following his release from prison. Jim likewise failed to register as a sex offender with the FBI. On February 2, 2006, the San Juan County Magistrate Court issued an arrest warrant for Jim's failure to register as a sex offender pursuant to Section 29-11A-4(I). Jim was arrested on July 15, 2006, in an area outside the boundaries of the Reservation near Fruitland, New Mexico.

**{7}** Defendant Michael Billy (Billy) is an enrolled member of the Navajo Nation. In 2000 Billy was convicted in federal court of a sex offense involving a minor for which registration is required under SORNA. The federal court ordered Billy to "comply with any applicable [sex offender] registration requirements [existing] in any jurisdiction in which [Billy] would reside" following his release from federal prison. Billy registered as a sex offender with the San Juan County authorities and renewed his registration annually for the years 2001 through 2004. Billy failed to renew his registration with the San Juan County authorities in 2005 and did not register as a sex offender with the FBI. At all times relevant to this case, Billy (1) was domiciled on the Reservation and within San Juan County, (2) was not employed outside the boundaries of the Reservation, and (3) was not attending school outside the boundaries of the Reservation.

3

**{8}** On January 26, 2006, the San Juan County Magistrate Court issued an arrest warrant for Billy's failure to register as a sex offender pursuant to Section 29-11A-4(I). Billy was arrested on July 7, 2006, in an area outside the boundaries of the Reservation.

**{9}** In March 2005 the Navajo Nation enacted its own Sex Offender Registration Act, although the law was not in effect until April 26, 2006. *See* Sex Offender Registration Act of 2005, CAP-20-06 (available at http://www.navajocourts.org/Resolutions/CAP-20-06SexOffender.pdf).

**{10}** The State charged Atcitty, Jim, and Billy (collectively Defendants) in separate proceedings with failing to register as sex offenders as required by SORNA. Defendants each filed motions to dismiss for lack of jurisdiction. Defendants asserted that the State lacked the authority to impose the registration requirements of SORNA on a member of the Navajo Nation living on the Reservation. The district court denied the motions, although it certified the issue for interlocutory appeal in the Jim case. The district court made the following determinations for each Defendant, with only slight variations, in denying the motions to dismiss.

    a.    [T]he Navajo Nation did not have a sex offender registration program . . . . until April 26, 2006;

    b.    Defendant[s'] federal offense required registration with the FBI pursuant to 42 U.S.C.[] § 14072(b)(1) and (c);

    c.    [F]ederal law requires state authorities to register a current address, fingerprints[,] and photograph of a person convicted of a sexual criminal offense against a minor with the FBI's national database[;] if the state's sex offender registration program is not minimally sufficient according to the federal standards, the sex offender must register directly with the FBI's national database[;]

    [d.]    The federal court had jurisdiction over the Defendant[s] when it ordered [Defendants] to comply with any registration requirements for sex offenders that exist in any jurisdiction in which [Defendants] would reside. . . . Defendant[s] resided in San Juan County, New Mexico on the Navajo Indian Reservation;

    [e.]    [Whether the State may require a Navajo] Indian living on a reservation located within the State's geographical boundaries defies traditional jurisdictional analysis in that the situs of the crime is unclear, whether the victim(s) of the crime is/are Indian is unclear, and that the crime arises from a statute that [this] Court . . . has labeled a "civil, remedial, regulatory, nonpunitive law;" [and]

4

[f.] [Because] the Navajo Nation has no sex offender registration law or program in effect, [the District] Court relies on the jurisdictional principle . . . adopted by the State . . . that "the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them[.]"

**{11}** Following entry of the district court's orders denying Defendants' motions to dismiss, Atcitty and Billy signed plea agreements in which they agreed to plead guilty to failing to register as sex offenders pursuant to SORNA, although they reserved their right to appeal the jurisdiction issue. The district court thereafter entered its judgment and sentence in the Atcitty and Billy cases. Atcitty and Billy timely filed notices of appeal. Jim filed an application for interlocutory appeal, which this Court granted on April 3, 2007. The State filed a motion to consolidate the cases on appeal, which we hereby grant due to the factual and legal similarity among the cases.

**{12}** Defendants each assert on appeal that the district court erred in denying their motions to dismiss because New Mexico courts lack both subject matter and personal jurisdiction over their cases. Defendants do not dispute that they were convicted of sex offenses involving minors and that such convictions trigger SORNA's registration requirements for New Mexico residents. *See* Section 29-11A-3(D)(1), (2) (defining "sex offender" as one who is a resident of, or changes residence to, New Mexico and has been "convicted of a sex offense pursuant to state, federal, tribal or military law[.]"); Section 29-11A-3(E) (defining "sex offense" as encompassing a variety of sex crimes involving children "or their equivalents in any other jurisdiction"). Instead, Defendants contend that they are not residents of New Mexico for purposes of enforcement of SORNA, because they are Navajo Indians living permanently on the Reservation and they do not work or go to school off the Reservation. Defendants maintain that they are residents of Indian country, as that term is defined in 18 U.S.C. § 1151 (2000), where the State's jurisdiction over them is limited, even though the land on which they live is geographically situated within the State of New Mexico. Atcitty and Billy further contend that the Navajo Nation did not invite New Mexico courts to take criminal jurisdiction over its members who violate federal or tribal sex offender registration laws. We decline to address this latter point because it did not form the basis for the district court's decision to deny Defendants' motions to dismiss.

### DISCUSSION

### 1. Standard of Review

**{13}** We review questions of subject matter jurisdiction and statutory construction de novo. *State ex rel. Children, Youth & Families Dep't v. Andree G.*, 2007-NMCA-156, ¶ 17, 143 N.M. 195, 174 P.3d 531. Federal statutes and case law govern questions regarding state court jurisdiction over Indians living in Indian country. *State v. Romero*, 2006-NMSC-039, ¶ 7, 140 N.M. 299, 142 P.3d 887.

**2. Framework for Analyzing Whether the State May Require Defendants to Comply with SORNA**

**{14}** The law regarding a state's ability to exercise regulatory authority in Indian country has evolved over time. *See Rice v. Rehner*, 463 U.S. 713, 718 (1983) (recognizing that the Court's decisions in this area of the law "have not been static"). The United States Supreme Court pronounced in *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 561 (1832), that state law could "have no force" on an Indian reservation. Over one hundred years later, the United States Supreme Court recognized that "Congress has to a substantial degree opened the doors of reservations to state laws[.]" *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 74 (1962). Resolution of state/tribal jurisdictional issues since *Worcester* has resulted in what can charitably be deemed a jurisdictional maze. Robert N. Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze*, 18 Ariz. L. Rev. 503, 500-13 (1976). The upshot of two hundred years of federal legislation, federal case law, and state case law, is that Indian country is no longer absolutely off limits to state jurisdiction in the sense indicated by *Worcester*. The mechanism used to open—or shut—the door and the extent to which it may be opened is of necessity dependent on the legal and factual framework present in any given situation. In *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 141 (1980), the Court observed that

> congressional authority and the semi-independent position of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be pre-empted by federal law. Second, it may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them.

*Id*. at 142 (internal quotation marks and citations omitted).

**{15}** The seminal case in the modern era dealing with the infringement prong is *Williams v. Lee*, 358 U.S. 217, 220 (1959). *Williams* noted the retreat from the absolutist position of *Worcester* "where essential tribal relations were not involved and where the rights of Indians would not be jeopardized" but also asserted that "the basic policy of *Worcester* has remained." 358 U.S. at 219. In the end the Court stated that "absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Id.* at 220. The question is not considered in a vacuum. Rather, consideration of the issues starts with "the assumption that the [s]tates have no power to regulate the affairs of Indians on a reservation." *Id.* As the Court noted in *Bracker*, "[w]hen on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the [s]tate's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest." 448 U.S. at 145. *See United States v. Peltier*, 344 F. Supp. 2d 539, 546 (E.D. Mich. 2004) (holding that state courts may not issue warrants for searches of tribal members

6

on tribal land in Indian country); *Cohen's Handbook of Federal Indian Law*, § 6.03[1][a] (2005 ed.).

**{16}** The initial presumption that state jurisdiction does not extend to Indian country and the strong federal interest in tribal development and self-government affects the manner in which federal legislation relied upon to assert state jurisdiction is interpreted. As noted in *Rice*, 463 U.S. at 719-20, "[w]hen we determine that tradition has recognized a sovereign immunity in favor of the Indians in some respect, then we usually are reluctant to infer that Congress has authorized the assertion of state authority in that respect 'except where Congress has expressly provided that State laws shall apply.'" (Citation omitted.) Further, waiver or repeal by implication of tribal self-government and freedom from state regulation is disfavored. *Bryan v. Itasca County*, 426 U.S. 373, 386 (1976) (holding that the enactment of Public Law 280, 28 U.S.C. § 1360 (1984), by Congress did not work to extend state regulatory authority over Indian tribes).

**{17}** It can generally be stated that no states have general regulatory authority over Indian country. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209 (1987) (holding that California did not have the authority to regulate or criminally punish on-reservation bingo games which did not comply with state limitations); *see also Bryan*, 426 U.S. at 375 n.2. Some states have general criminal jurisdiction in Indian country pursuant to Public Law 280. New Mexico is not a Public Law 280 state. *Cabazon Band of Mission Indians*, 480 U.S. at 208.

**{18}** The legal landscape in New Mexico is similar to the federal history noted above. In *State v. Begay*, 63 N.M. 409, 412, 320 P.2d 1017, 1019 (1958), *overruled on other grounds by State v. Warner*, 71 N.M. 418, 379 P.2d 66 (1963), our Supreme Court announced an absolutist position that the New Mexico Constitution's exclusionary clause, Art. XXI, Sec. 2, denied the state all jurisdiction over Indian land and tribes until Indian title was extinguished. Our Supreme Court retreated from that position in *Your Food Stores, Inc. (NSL) v. Village of Española*, 68 N.M. 327, 330, 361 P.2d 950, 953 (1961) to allow exercise of jurisdiction where "specifically granted by Act of Congress, or sanctioned by decisions of the Supreme Court of the United States." In *Your Food Stores, Inc. (NSL)*, the Supreme Court voided an attempt by a municipality to annex property leased by the Santa Clara Pueblo to a private, non-Indian merchant. The Court noted with approval the language of *Williams*, requiring an express grant of power by Congress to the states to exercise jurisdiction in Indian country. *Your Food Stores, Inc. (NSL)*, 68 N.M. at 332, 361 P.2d at 954.

**{19}** In *State v. Warner*, 71 N.M. 418, 421, 379 P.2d 66, 68 (1963), our Supreme Court held that state courts could try cases involving crimes committed on Indian land by non-Indians. Relying on *Williams*, and other precedents, the Supreme Court decided that trying non-Indians in state court "would not affect the authority of the tribal counsel over reservation affairs and, therefore, would not infringe on the right of the Indians to govern themselves." *Warner*, 71 N.M. at 421-22, 379 P.2d at 68.

**{20}**  In *Chino v. Chino*, 90 N.M. 203, 206, 561 P.2d 476, 479 (1977), applying both the preemptive approach and the infringement test, our Supreme Court held New Mexico courts did not have jurisdiction to hear an action for forcible entry and detainer involving a home situated on fee patent land located within the exterior boundaries of the Mescalero Apache Indian Reservation.  The Supreme Court's preemption analysis is to the point: in light of New Mexico's Enabling Act, which  disclaims jurisdiction over Indians, the Tribe's treaty submitting only to the authority of the United States precludes "the state from exercising jurisdiction over property lying within the reservation boundaries."  *Id.*

**{21}**  With regard to the infringement test, the Court stated:

> When the land lies within a reservation, enforcement of the owner's rights to such property by the state court would infringe upon the governmental powers of the tribe, whether those owners are Indians or non-Indians.  Civil jurisdiction of lands within the reservation remains with the tribe.  Even though the Mescalero tribal law makes no provision for a wrongful entry and detainer action, the state may not assume jurisdiction without congressional or tribal authorization.  Indian customs and traditions may dictate different approaches than that which the state may use.  For a state to move into areas where Indian law and procedure have not achieved the degree of certainty of state law and procedure would deny Indians the opportunity of developing their own system.

*Id.*

**{22}**  Finally, in *Romero*, our Supreme Court held that the State did not have jurisdiction to prosecute crimes committed by the defendant Indians on private fee land located within the exterior boundaries of the defendant's respective Pueblos.  The *Romero* opinion apparently took it as a given that the State would have no jurisdiction if the property where the crimes occurred qualified as "Indian country" within the meaning of 18 U.S.C. § 1151, since that was the only issue it identified for discussion.  *Romero*, 2006-NMSC-039, ¶ 7.  Relying in part on the canon that ambiguities in statutes are interpreted to the benefit of Indians, our Supreme Court held that private, non-Indian owned fee land within the exterior boundaries of the Pueblos was "Indian country" and that no Congressional action with regard to the property could be interpreted to clearly and explicitly have changed the status of the land.  *Id.* ¶¶ 23-25.  *Accord*, *State v. Quintana*, 2008-NMSC-012, ¶ 4, 143 N.M. 535, 178 P.3d 820 (in general, a state does not have jurisdiction over crimes committed by an Indian in Indian country).

**{23}**  The State argues that the jurisdictional barrier described above has been overcome by the federal legislation which prompted New Mexico's adoption of its SORNA and by recognition that the crime occurred off the reservation.  We respond to each argument in turn.

8

### 3. Federal Sex Offender Registration Legislation

**{24}** In 1994 Congress established a nationwide program for sex offender registration know as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Program, which is codified at 42 U.S.C. § 14071 (1998). The Jacob Wetterling Act encourages states to enact sex offender registration and community notification laws by conditioning federal funding for crime prevention on the existence of such laws. *See* 42 U.S.C. § 14071(g)(2)(A) ("A [s]tate that fails to implement the program as described in this section shall not receive 10 percent of the funds that would otherwise be allocated to the [s]tate under [s]ection 3756 of this title."). In addition, the Jacob Wetterling Act sets forth detailed requirements for state sex offender registration programs. *See id.* § 14071(b). The statute also requires participating states to share registration information with law enforcement agencies having jurisdiction where the sex offender expects to reside and to transmit registration information to the FBI and a National Sex Offender Registry. *Id.* § 14071(b)(2). A sex offender who knowingly fails to register under a state program "shall be subject to criminal penalties in any [s]tate in which the [sex offender] has so failed." *Id.* § 14071(d).

**{25}** In 1996 the Jacob Wetterling Act was amended, in what came to be known as "Megan's Law," to require states to develop a program to disseminate information to the community about registered sex offenders. *Id.* § 14071(e). Megan's Law allowed broad discretion to the states in the design of their individual programs.

**{26}** New Mexico first enacted its Sex Offender Registration Act (SORA) in 1995. *State v. Druktenis*, 2004-NMCA-032, ¶ 17, 135 N.M. 223, 86 P.3d 1050. SORA, like the sex offender registration statutes in most states, was a version of the Jacob Wetterling Act. *Id.* In 1999 the New Mexico Legislature amended SORA, which is now (with the addition of Notification) known as SORNA. *Id.* ¶ 6. SORNA provides that "[a] sex offender who willfully or knowingly fails to comply with [SORNA's] registration requirements . . . is guilty of a fourth degree felony[.]" Section 29-11A-4(N); *see Druktenis*, 2004-NMCA-032, ¶ 22.

**{27}** A plain reading of the Jacob Wetterling Act and Megan's Law demonstrates that Congress intended for the states to be the primary information gatherers and compliance enforcers for a national sex offender registration regime. *See* 42 U.S.C. §§ 14071, 14072. The Jacob Wetterling Act uses the state residency of a sex offender as a key factor in determining the registration requirements with which the sex offender must comply. *See, e.g.*, *id.* § 14071(b)(5) (providing that a sex offender who moves to a new state "shall report the change of address to the responsible agency in the [s]tate the person is leaving, and shall comply with any registration requirement in the new [s]tate of residence"). Where a state does not meet the minimum requirements of Megan's Law, the FBI fills in the "gap" in coverage by accepting direct registration from sex offenders. *Id.* § 14072(c). Neither the Jacob Wetterling Act or Megan's Law mentions or addresses Indian tribes, tribal jurisdiction, or state jurisdiction in Indian country in any way. In addition, the State has not

cited any legislative history indicating any consideration of the way the two acts affect or would operate in Indian country.

**{28}** The specific question presented then is whether the two statutes can be deemed an express statement by Congress that state sex offender registration laws shall apply in Indian country. We hold that they cannot. The language of the statutes betrays no indication that Congress intended the term "resident" by itself to override historically recognized and accepted limits on the reach of state criminal and regulatory law in Indian country. The type of language specifically referring to Indians and Indian tribes which would support a conclusion that Congress intended to override tribal sovereignty is simply missing. The state points to the broad nature of the term "resident" and the fact that Indians are for most purposes residents of the State they live in to argue that Congress's intent was to be all-inclusive. This approach, however, is the opposite of our normal mode of interpretation of statutes affecting Indians and Indian tribes, and we decline to indulge it. *United States v. Dion*, 476 U.S. 734, 739-40 (1986) ("What is essential is clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty."); *Bryan*, 426 U.S. at 392-93 (waiver or repeal by implication of tribal freedom from state regulation is disfavored); *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 174 (1973) (doubtful expressions in treaties are to be resolved in favor of Indians); *Williams*, 358 U.S. at 221 ("Significantly, when Congress has wished the [s]tates to exercise this power [civil or criminal jurisdiction in Indian country] it has expressly granted them the jurisdiction which *Worcester* . . . had denied.").

**{29}** There is only one other state case addressing the issue—*State v. Jones*, 729 N.W.2d 1 (2007). Though its holding is not directly applicable in New Mexico because it issues from a Public Law 280 state, it provides insight as to the reach of the Jacob Wetterling Act and Megan's Law. In *Jones*, a sharply divided court held that Minnesota could enforce its version of SORNA against reservation Indians because it was a criminal/prohibitary provision covered by the general grant of criminal jurisdiction under Public Law 280. *Jones*, 729 N.W.2d at 4-5, 12. New Mexico is not a Public Law 280 state and that analysis does not apply here. In accordance with the broad understanding that Public Law 280 does not grant states civil or regulatory jurisdiction in Indian country, the Court in *Jones* assumed that Minnesota could not enforce its SORNA if the statute was deemed a civil/regulatory provision. *Id.* at 5. Also, it is notable that nowhere in the majority or concurring opinions is there any hint of reliance on the Jacob Wetterling Act or Megan's Law as the source of express Congressional permission to enforce the registration statute in Indian country.

**{30}** At least one commentator has opined that

> While the litigation [in *Jones* had] called attention to what many observers considered to be a gap in the nation's ability to track sex offenders and likely spawned congressional attention to the matter in SORNA [the Adam Walsh Child Protection and Safety Act], the law's enactment implicitly conceded

10

the defendant's argument in *State v. Jones* and, in any event, SORNA now occupied the field, imposing a clear federal mandate of registration.

Virginia Davis & Kevin Washburn, *Sex Offender Registration in Indian Country*, 6 Ohio St. J. Crim. L. 3, 13 (2008).

**{31}** We agree with this assessment. The Adam Walsh Child Protection and Safety Act, 42 U.S.C. 16911 (2006), provides avenues for Indian tribes to become jurisdictions that participate in the national sex offender registration regime. *See id.* § 16911(10)(H) (providing that a federally recognized Indian tribe may be included as a jurisdiction "[t]o the extent provided and subject to the requirements of [S]ection 16927 of this title"). An Indian tribe may elect to participate as a jurisdiction under the Adam Walsh Act by passing a "resolution or other enactment of the tribal council or comparable governmental body." *Id.* § 16927(a)(1)(A). Although the Adam Walsh Act gives Indian tribes the opportunity to become participating jurisdictions, the remaining provisions of Section 16927 evince Congress's intent to ensure territorial coverage by other jurisdictions should a tribe prove unable or unwilling to become a participating jurisdiction. For example, a tribe may

> elect to delegate its functions under this part to another jurisdiction or jurisdictions *within which the territory of the tribe is located* and to provide access to its territory and such other cooperation and assistance as may be needed to enable such other jurisdiction or jurisdictions to carry out and enforce the requirements of this part.

*Id.* § 16927(a)(1)(B) (emphasis added). The Adam Walsh Act imputes to a tribe the election to delegate described in Section 16927(a)(1)(B) if the tribe is: (1) subject to the law enforcement jurisdiction of a state under 18 U.S.C. § 1132 (Public Law 280); (2) the tribe does not make an election to participate by July 27, 2007, or rescinds an election to participate; or (3) "the Attorney General determines that the tribe has not substantially implemented the requirements of this part and is not likely to become capable of doing so within a reasonable amount of time." 42 U.S.C. § 16927(a)(2)(C). The Adam Walsh Act further provides that an Indian tribe subject to the Act "is not required to duplicate functions under this part which are fully carried out by another jurisdiction or jurisdictions *within which the territory of the tribe is located*." *Id.* § 16927(b)(1) (emphasis added). Finally, the Adam Walsh Act allows a participating tribe to cooperate with such a jurisdiction or jurisdictions by sharing or delegating functions with respect to sex offenders subject to the tribe's jurisdiction. *Id.* § 16927(a)(2).

**{32}** The foregoing provisions of the Adam Walsh Act demonstrate that Congress recognized that some Indian tribes are willing and able to become participating jurisdictions in the national sex offender registration regime. However, in the event that an Indian tribe cannot or chooses not to become a full participating jurisdiction, Congress has set forth strict mechanisms to ensure that territorial coverage is achieved by other jurisdictions, either with or without the tribe's consent. *Id.* §§ 16927(a)(1)(B), (a)(2)(A)-(C), (b)(1)-(2).

Significantly, Congress has expressly mandated that the jurisdictions that must provide such coverage are those "within which the territory of the tribe is located." *Id.* §§ 16927(a)(1)(B), (b)(1)-(2). This language demonstrates Congress's intent to have the states maintain full, statewide coverage when a tribe within the state does not elect to become a participating jurisdiction. Moreover, Congress has lowered the barrier of tribal sovereignty in this context by directing tribes that delegate their functions as participating jurisdictions, either directly or by imputation, to "provide access to [their] territory and such other cooperation and assistance as may be needed to enable such other jurisdiction or jurisdictions to carry out and enforce the requirements of this part." *Id.* § 16927(a)(1)(B).

**{33}** The type of specificity found in the Adam Walsh Act is what the authorities look for to find an express statement from Congress allowing state assertion of jurisdiction in Indian country. This specificity is what is lacking in the Jacob Wetterling Act and Megan's Law.

## 4.     The Locus of the Crime

**{34}** The State argues that the crime occurred off of the Navajo reservation in that the statute requires sex offenders to personally appear at the Sheriff's office in each county to register. The state can generally enforce its criminal and civil laws against Indians for conduct occurring outside Indian country. *See Quintana*, 2008-NMSC-012, ¶ 4.

**{35}** It is unclear where the crime occurred. The federal law the state relies upon seems to support finding the locus at the sheriff's office. *Johnston v. United States*, 351 U.S. 215, 220 (1956) (where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime). However, the only case actually dealing with registration requirements in the context of Indian country states that the crime occurred on the reservation where the defendant resided. *Jones*, 729 N.W.2d at 4.

**{36}** We do not need to decide the issue, however, because there can only be a crime if the State has the power to force Defendants to appear at the sheriff's office to register. If the State's regulatory authority does not reach into Indian country to impose a duty, failure to comply with the duty cannot be a crime. We have already held that the State has no basis to enforce its sex offender registration requirements in Indian country under the circumstances presented here.

## CONCLUSION

**{37}** We conclude that the State's application of SORNA to Defendants was not authorized by federal law and thus infringed on the Navajo Nation's tribal sovereignty. We therefore reverse the district court's denial of Defendants' motions to dismiss. The convictions of Atcitty and Billy for failure to register are reversed. We remand case No. 27,333 for further proceedings consistent with this opinion.

**{38}     IT IS SO ORDERED.**

12

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for** _State v. Atcitty_**, No. 27,189/27,333/27,940**

| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |

| **CL** | **CRIMINAL LAW** |
| CL-SX | Sexual Offences |

| **FL** | **FEDERAL LAW** |
| FL-FJ | Federal Jurisdiction |

| **IL** | **INDIAN LAW** |
| IL-IL | Indian Lands |
| IL-IG | Indian Law, General |
| IL-TJ | Tribal and State Authority and Jurisdiction |

| **MS** | **MISCELLANEOUS STATUTES** |
| MS-SX | SORNA (Sexual Offender Registration and Notification Act) |